IN THE MATTER OF THE ADOPTION OF S.A.H.
2022 OK 10
503 P.3d 1190
Case Number: 118986; Comp. w/119218
Decided: 02/01/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 10, 503 P.3d 1190

 
 

IN THE MATTER OF THE ADOPTION OF: S.A.H., Minor Child.

IN THE MATTER OF THE GUARDIANSHIP OF: S.A.H., Minor Child.

NO. 118,986 ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY 
Honorable Kurt Glassco, Trial Judge

NO. 119,218 ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
Honorable James Keeley, Trial Judge

Thomas H. Landrum, The Firm on Baltimore, PLLC, Tulsa, Oklahoma, for Appellant.

Catherine Z. Welsh and Jim C. McGough, Welsh & McGough, PLLC, Tulsa, Oklahoma, for Appellees.

¶0 Minor child's cousin appealed two district court decisions that (1) denied the cousin's motion to vacate an adoption of the minor child to her paternal grandparents and (2) dismissed the cousin's claim for guardianship due to the adoption. This Court retained the appeals. We affirm the district courts' decisions. The cousin had no statutory or constitutional rights to custody of the minor child to warrant vacating an adoption consented to by the minor child's father.

NO. 118,986 - DISTRICT COURT'S JUDGMENT AFFIRMED.

NO. 119,218 - DISTRICT COURT'S JUDGMENT AFFIRMED.

Winchester, J.

¶1 Today, we dispose of two related cases involving minor child S.A.H. by a single opinion. In Case No. 118,986, Appellant S.A.H.'s maternal first cousin (Cousin) appealed the district court's denial of her motion to vacate an order finalizing the adoption of the minor child to Appellees, S.A.H.'s paternal grandparents (Grandparents).

¶2 The issues before this Court are (1) whether the adoption court erred in granting the adoption of the minor child to Grandparents based on the consent of S.A.H.'s father (Father) while Cousin had a claim for general guardianship pending, and (2) whether the guardianship court erred in dismissing Cousin's petition for guardianship due to the adoption. We answer both in the negative. Cousin holds no constitutional or statutory right to unwind Grandparents' adoption to which Father consented. Due to Grandparents' adoption of the minor child, a guardianship is not necessary.

FACTS AND PROCEDURAL HISTORY 

¶3 S.A.H. was born out-of-wedlock on February 3, 2009. S.A.H.'s mother (Mother) had sole legal custody of S.A.H. until Mother could no longer care for the minor child due to a terminal illness. On May 2, 2019, Cousin petitioned to be S.A.H.'s temporary and general guardian in Tulsa County District Court, Case No. PG-2019-293 (Guardianship Matter). Cousin's basis for her request for the guardianship was that Mother had a terminal illness and S.A.H.'s father had not acknowledged paternity, had not obtained a court determination of paternity, and had not supported the minor child financially or otherwise. The district court appointed Cousin as the temporary guardian of the minor child. On May 4, 2019, Mother passed away.

¶4 On July 31, 2019, S.A.H.'s father (Father) petitioned for determination of paternity and custody of the minor child in Tulsa County District Court, Case No. FP-2019-230 (Paternity Matter). Father established his paternity through genetic testing.

¶5 On October 1, 2019, Father filed his notice of paternity adjudication and motion to dismiss the temporary guardianship in the Guardianship Matter. On October 16, 2019, the guardianship court held a show-cause hearing. The guardianship court found insufficient evidence to continue the guardianship and terminated Cousin's temporary guardianship. At Cousin's request, the guardianship court set a trial for her petition for general guardianship on January 22, 2020.

¶6 On October 17, 2019, Grandparents petitioned to adopt S.A.H. in Tulsa County District Court, Case No. FA-2019-357 (Adoption Matter). On November 1, 2019, Father petitioned the paternity court for custody of S.A.H. due to his established paternity, and the court granted Father sole legal and physical custody of the minor child. Father then provided his consent to Grandparents' adoption of the minor child in the Adoption Matter. On January 31, 2020, the adoption court held a best-interests hearing and issued the final decree of adoption to Grandparents.

¶7 In the Guardianship Matter, Cousin requested a continuance for the trial on her petition for general guardianship of the minor child. In February 2020, Cousin filed multiple motions in preparation for the trial, which prompted Grandparents to file a motion to dismiss the Guardianship Matter due to the adoption. On March 13, 2020, the guardianship court struck the hearing on Cousin's motions as moot due to the finalized adoption.

¶8 Almost two months after the guardianship court struck the hearing on Cousin's motions, Cousin filed a motion to vacate Grandparents' adoption in the Adoption Matter. The adoption court held a hearing and denied Cousin's motion to vacate, reasoning that Cousin did not demonstrate a basis under 12 O.S.2011, § 1031

¶9 On October 19, 2020, the guardianship court held a hearing and granted Grandparents' motion to dismiss the Guardianship Matter. The guardianship court concluded that Cousin's request for guardianship was moot due to the finalized adoption.

¶10 Cousin appealed the denial of her motion to vacate the final adoption decree in the Adoption Matter.

STANDARD OF REVIEW

¶11 The Court reviews the appointment or termination of a guardian for an abuse of discretion. Bank of Okla., N.A. v. Red Arrow Marina Sales & Serv., Inc., 2009 OK 77224 P.3d 685Smith v. City of Stillwater, 2014 OK 42328 P.3d 1192 Brigmam v. Cheney, 1910 OK 316112 P. 993In re Guardianship of Holly, 2007 OK 53164 P.3d 137de novo, since an appellate court has plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings. Id.

¶12 The standard of review for the denial of Cousin's motion to vacate Grandparents' adoption of the minor child is also an abuse of discretion. Smith, 2014 OK 42Bank of Okla., N.A., 2009 OK 77In re Adoption of C.D.M., 2001 OK 10339 P.3d 802

DISCUSSION

I. THE GUARDIANSHIP COURT AND ADOPTION COURT PROPERLY CONSIDERED THE BEST INTERESTS OF THE MINOR CHILD. 

¶13 As a preliminary matter, Cousin focuses her arguments on appeal to an overarching issue: the district courts abused their discretion in not considering the best interests of the minor child when the courts terminated the temporary guardianship, granted the adoption to Grandparents, and dismissed the Guardianship Matter. Essentially, Cousin contends she could better care for the minor child than Father or Grandparents. We find this argument without merit.

¶14 Under Oklahoma law, the presumption is a minor child's best interest "is served by placement with its natural parent in the absence of clear and convincing evidence establishing that the parent is unfit." In re Guardianship of M.R.S., 1998 OK 38960 P.2d 357Ingles v. Hodges, 1977 OK 18562 P.2d 845 In re Guardianship of M.R.S., 1998 OK 38

¶15 Cousin construes her request for a guardianship to be akin to a proceeding for termination of parental rights to obtain permanent custody of the minor child; it is not. The guardianship court could terminate Cousin's temporary guardianship of the minor child when it was no longer necessary--when the impediment to the natural parent's custody was removed, unless to do so would have been harmful to the welfare of the child. 30 O.S.2011, § 4-804In re Guardianship of Hatfield, 1972 OK 10493 P.2d 819see also Grose v. Romero, 1948 OK 120193 P.2d 1014

¶16 The paternity court then granted Father full custody of the child, and Father had the constitutional right to make decisions regarding the welfare of his child. In re Adoption of D.T.H., 1980 OK 119615 P.2d 287In re Herbst, 1998 OK 100971 P.2d 395McDonald v. Wrigley, 1994 OK 25870 P.2d 777 (noting that a district court may award custody to a third party if it finds both parents unfit); Davis v. Davis, 1985 OK 85708 P.2d 1102Eldredge v. Taylor, 2014 OK 92339 P.3d 888

¶17 The record established that Father believed it was in the best interests of S.A.H. for Grandparents to adopt and care for her because they could provide a more stable home for the minor child due to Father's work schedule. Grandparents are retired and have the flexibility to meet the needs of the minor child when demands arise. Father and Grandparents had been a part of the minor child's life since she was born, and Father had the opportunity to continue to be a part of the minor's life after the adoption. Grandparents had experience caring for children in raising their own adopted children and in teaching students throughout their careers in education. Grandparents also demonstrated a desire to facilitate a relationship between the minor child and Mother's extended family. Upon review, there is nothing within the record that shows requisite harm to the minor or unfitness to prevent Father's decision to consent to Grandparents' adoption. See e.g., In re Herbst, 1998 OK 100

II. THE ADOPTION COURT COULD PROCEED WITH GRANDPARENTS' PETITION FOR ADOPTION WHILE THE GUARDIANSHIP REQUEST WAS PENDING.

¶18 Cousin contends that it was improper for the adoption court to proceed with the Adoption Matter while the Guardianship Matter was pending. She further argues that Grandparents aggravated the situation by not fully disclosing in their adoption petition that Cousin had a claim for general guardianship still pending. We disagree; the adoption court correctly proceeded with the minor child's adoption.

¶19 The guardianship court had jurisdiction to order and administer the Guardianship Matter and retained that jurisdiction over the guardianship "until termination of the proceeding." 30 O.S.2011, § 1-11330 O.S.2011, § 4-804see also In re Guardianship of Hatfield, 1972 OK 10see also Grose, 1948 OK 120193 P.2d 1014See In re Adoption of R.W.S., 1997 OK 148951 P.2d 83 (holding a guardianship was moot since the court awarded custody of the minor child to the natural mother). Upon dismissal, the guardianship court's jurisdiction would have concluded at that time.

¶20 Even with the district court allowing Cousin's general guardianship claim to survive, we hold that the Guardianship Matter and the Adoption Matter were separate proceedings requesting different relief. Oklahoma law allows some related actions to proceed simultaneously--just as the Paternity Matter and Guardianship Matter proceeded simultaneously in this case. See, e.g., Steltzlen v. Fritz, 2006 OK 20134 P.3d 141see also, e.g., 10 O.S.2011, § 7503-302(A) (a paternity action may be filed when notice of an adoption is given). Our Court allows two matters to proceed simultaneously when full, complete, and adequate relief cannot be obtained in the first court and an intolerable conflict of jurisdiction does not exist. State v. Lohah, 1967 OK 165434 P.2d 928See Birtciel v. Jones, 2016 OK 103382 P.3d 1041

¶21 Cousin relies on multiple cases to support her contention that it was improper for the adoption court to proceed with the Adoption Matter while the Guardianship Matter was pending. These cases involved either divorce actions or third parties' efforts to obtain a guardianship or adoption of a minor child. Those appellate decisions decided the procedural and jurisdictional issues based on the specific facts in each case. However, none involved a natural parent with full custody of a minor child consenting to an adoption. We have recognized the importance of the right to consent to an adoption as an important right in and of itself. Steltzlen, 2006 OK 20. Because of that right, we recognize a preference of Father's consent for Grandparents to adopt the minor child over another family member's request for guardianship--where that family member has no current guardianship or rights to custody of the minor child. Therefore, under the facts of this case, the adoption court could proceed with the Adoption Matter even though a claim for general guardianship was pending.

¶22 We acknowledge that Grandparents stated in their adoption petition that the guardianship court dismissed the Guardianship Matter without clarifying that Cousin had a claim for general guardianship pending. However, Grandparents' petition provided the case number for the Guardianship Matter. The adoption court should have confirmed the status of the Guardianship Matter and consolidated the matter or deferred to the guardianship court if it thought necessary. However, we do not believe Grandparents' actions warrant the unwinding of the adoption of the minor child to which Father consented.

III. GRANDPARENTS WERE NOT REQUIRED TO GIVE COUSIN NOTICE OF THE ADOPTION.

¶23 Cousin contends Grandparents violated her due process rights when they did not give her notice of their pending adoption of the minor child. We again disagree.

¶24 Cousin had no right--by statute or constitution--to notice of Grandparents' adoption. In Birtciel, a grandmother sought visitation of her minor grandchild pursuant to her rights under Oklahoma statutes. 2016 OK 103382 P.3d 1041Id. ¶¶ 3-6, 382 P.3d at 1042-43. In determining whether the grandmother had standing in the adoption matter, the Court ruled that the grandmother's standing only extended to purposes of resolving her visitation rights, not to the resolution of the adoption. It held consent to the adoption was necessary only from the child's father and grandmother could not have appeared to object at the adoption. The Court further concluded that without the need for her consent, the grandmother was not entitled to notice. Id. ¶ 12, 382 P.3d at 1044.

¶25 Similarly, Cousin's standing in this case did not extend to the resolution of Grandparents' adoption as consent to the adoption was necessary only from Father. Cousin could not appear to object to the adoption. Grandparents therefore followed the notice requirements under the Oklahoma adoption statutes, which we strictly construe. Oklahoma adoption procedure is "wholly within the control of the legislature," and the Court cannot broaden the requirements to obtain an adoption beyond that set by the Legislature. Head v. McCracken, 2004 OK 84102 P.3d 670 In re Adoption of G.D.L., 1987 OK 115747 P.2d 282

¶26 We note the basis for granting relief to the grandmother in Birtciel was the Court's desire not to penalize the grandmother when Oklahoma statutes governed her visitation rights and as required by the statutes, she filed her request for visitation prior to the adoption matter. 2016 OK 103 ¶ 15, 382 P.3d at 1045See, e.g., K.R. v. B.M.H., 1999 OK 40982 P.2d 521

CONCLUSION

¶27 Cousin requests an equitable remedy in this matter--for the Court to give her custody rights that do not exist under Oklahoma law. Equity is subject to the United States and Oklahoma constitutions and may not exceed the protections and privacy therein assured to families. Allowing Cousin to object and unwind an adoption that Father consented to would violate his constitutional right to make decisions regarding his child. Without the requisite harm or unfitness, Cousin's interest does not rise to a level so compelling as to warrant intrusion upon the fundamental right of a parent, including the right to consent to adoption. We refuse to extend equity to provide Cousin a remedy in this case. For these reasons, we affirm the adoption court's denial of Cousin's motion to vacate Grandparents' adoption and the guardianship court's dismissal of Cousin's request for guardianship due to the adoption.

NO. 118,986 - DISTRICT COURT'S JUDGMENT AFFIRMED.

NO. 119,218 - DISTRICT COURT'S JUDGMENT AFFIRMED.

CONCUR: Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, Combs and Rowe, JJ.

CONCUR IN RESULT: Gurich and Kuehn, JJ.

FOOTNOTES

(b) ... In appeals from juvenile proceedings including, but not limited to, adoption and paternity proceedings and proceedings under the juvenile code, the initial of the child's name shall be used rather than the child's name.

Referring to Appellant as "Cousin" and to Appellees as "Grandparents" in this opinion is done in the same spirit of protecting the privacy of the child as that expressed in Oklahoma Supreme Court Rule 1.25.

The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:

1. By granting a new trial for the cause, within the time and in the manner prescribed in Sections 651 through 655 of this title;
2. As authorized in subsection C of Section 2004 of this title where the defendant had no actual notice of the pendency of the action at the time of the filing of the judgment or order;
3. For mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order;
4. For fraud, practiced by the successful party, in obtaining a judgment or order;
5. For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings;
6. For the death of one of the parties before the judgment in the action;
7. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;
8. For errors in a judgment, shown by an infant in twelve (12) months after arriving at full age, as prescribed in Section 700 of this title; or
9. For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

12 O.S.2011, § 1031

In re Adoption of B.K.J., 1982 OK 143639 P.2d 611Lohah, 1967 OK 165see also In re Adoption of A.D.H., 2000 OK CIV APP 13415 P.3d 519